UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 3:19-cr-00045-MMD-CBC |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| DONTE SMITH, | |
| Defendant. | |

**I.     SUMMARY**

Defendant Donte Smith is serving a 30-month sentence, followed by three years supervised release, at the Federal Correctional Institution at Phoenix ("FCI Phoenix") for felon in possession of a firearm. (ECF No. 38 at 2-3.) Before the Court is Smith's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on the "extraordinary and compelling reasons" presented by the COVID-19 pandemic as applied to his health and particular circumstances.[1] (ECF No. 33 (the "Motion").) Because Smith has served 70% of his sentence and has a history of smoking and hypertension—and as further explained below—the Court will grant his Motion.

**II.     BACKGROUND**

On October 24, 2019, Smith pled guilty to possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (ECF Nos. 19, 20.) On July 27, 2019, Smith knowingly possessed a pistol previously reported stolen. (ECF No. 20 at 6.) He was arrested after

---

[1] The government opposes his release. (ECF No. 38.) Smith filed a reply (ECF No. 39) and a supplement ("Supplement") (ECF No. 40). Defendant also moved to file his medical records (attached as Exhibit B to his Motion. (ECF No. 34.) The Court agrees that Exhibit B contains confidential medical records that warrant sealing.

officers stopped and searched him. (*Id.*) On March 16, 2020, the Court sentenced him to 30 months in prison, followed by three years supervised release. (ECF No. 31.)

At the time he filed his Motion, Smith had nine months remaining on his 30-month sentence. (ECF Nos. 33 at 3.) He has thus completed more than 70% of his custodial sentence. As noted, Smith seeks release because his preexisting medical conditions make him particularly vulnerable to COVID-19. (*Id.*) Smith is a Black male with a history of smoking and suffers from hypertension. (*Id.* at 1-2; ECF No. 39 at 2-8.) Shortly after the Motion was fully briefed, Smith informed counsel that he has contracted COVID-19. (ECF No. 40.) The government opposes his Motion.

### III.   LEGAL STANDARD

Smith specifically seeks release under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act ("FSA") of 2018. (ECF No. 41 at 2.) This provision offers Smith a limited exception to the general rule that the Court may not modify or reduce the length of a sentence after the Court has imposed it. *See* 18 U.S.C. § 3582(c); *see also U.S. v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (explaining that generally a court cannot modify a sentence after it has imposed it). "It allows the sentencing judge to reduce a sentence based on 'extraordinary and compelling reasons' after the defendant has asked the [Bureau of Prisons ("BOP")] to bring such a motion on her behalf and exhausted all administrative rights to appeal the BOP's denial of that request." *U.S. v. Mogavero*, Case No. 2:15-cr-74-JAD-NJK, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)).[2] Moreover, before granting such a request, the Court "must consider the factors in 18 U.S.C. § 3553(a) 'to the extent that they are applicable,' and any sentence reduction must be 'consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (citations omitted).

---

[2]The Court reads § 3582(c) as granting broad authority to modify and reduce a sentence upon a showing of 'extraordinary and compelling reasons.' *See* 18 U.S.C. § 3582(c).

## IV. DISCUSSION

The Court follows a three-step process to evaluate the Motion. First, the Court determines if Smith has satisfied the statutory prerequisites under Section 3582(c)(1)(A). Then, the Court evaluates whether Smith has shown "extraordinary and compelling reasons" for the Court to release him under Section 3582(c)(1)(A)(i). Finally, the Court addresses the applicable policy statements and sentencing factors under Section 3582(c)(1)(A). Here, as there is no dispute regarding the first step, the Court will primarily address the latter two steps. Ultimately, the Court finds good cause exists to grant Smith's Motion.

### A. Statutory Prerequisites

Section 3582(c)(1)(A) requires that a defendant ask the BOP to bring a motion for compassionate release on the defendant's behalf before filing such a motion with a court, normally done by submitting a request to the warden. *See* 18 U.S.C. § 3582(c)(1)(A). In addition, a defendant may only bring a motion under Section 3582(c)(1)(A) "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.*

Smith represents he has exhausted his administrative remedies because he submitted a request on November 10, 2020, and more than 30 days later, the warden has not responded. (ECF Nos. 33 at 8, 33-3.) The government agrees that the Court may entertain Smith's request because he submitted his request more than 30 days ago. (ECF No. 38 at 5.) For these reasons, the Court finds it has jurisdiction over Smith's request, and will move on to the other two steps of the analysis.

### B. Extraordinary and Compelling Reasons

Having found Smith has satisfied the statutory prerequisites, the Court moves on to the merits of the Motion.

To prevail on the "extraordinary and compelling reasons" prong of the analysis, Smith must establish: (1) the combination of his age and underlying health conditions elevates his risk of becoming seriously ill were he to contract COVID-19 (the "Underlying Health Conditions Prong"); and (2) he faces greater risk from COVID-19 if he continues to be housed at his current facility instead of being released (the "Location Prong"). *See, e.g.*, *U.S. v Kauwe,* 467 F.Supp.3d 940, 942-43 (D. Nev. June 3, 2020).

### i. Underlying Health Conditions Prong

The parties dispute whether Smith's medical conditions place him at a high risk of COVID-19 complications or contracting a severe case of COVID-19. (ECF Nos. 33, 38.) Smith argues that the combination of his race, a history of smoking, and hypertension add up to extraordinary and compelling reasons to grant the Motion. (ECF Nos. 33 at 8-14, 39 at 2-3.) In his Supplement, Smith further argues that even though he is currently positive for COVID-19, release is still appropriate because the long-term implications of COVID-19 are unknown, and he can likely be reinfected. (ECF No. 40 at 4-5.) The government argues that Smith's medical records do not support the claim that he has health conditions qualify as extraordinary and compelling reasons for release. (ECF No. 38 at 13.) The Court finds that the combination of his conditions results in extraordinary and compelling reasons for granting the Motion.

As to reinfection, the CDC reports that reinfection is expected, but while "reports of reinfection have been infrequent . . . risk of reinfection depends on the likelihood of re-exposure to infectious cases of COVID-19." CDC, *Duration of Isolation & Precautions for Adults,* https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html (last updated October 19, 2020) (emphasis in original). Thus, although limited data exists on the likelihood of and potential risks of reinfection, "the Court must err on the side of caution to avoid potentially lethal consequences for [Defendant]." *United States v. Yellin*, Case No. 3:15-CR-3181-BTM-1, 2020 WL 3488738, at *1-2 (S.D. Cal. June 26, 2020) (finding extraordinary and compelling reasons exist where COVID-positive inmate at Terminal Island, who did not develop severe symptoms, had a combination of medical conditions

that made him at risk of COVID complications). Smith's medical conditions, discussed below, which put him at higher risk should he become reinfected, and his exposure levels at FCI Phoenix, further support the Court's finding of compelling reasons.

First, Smith has a history of smoking. The government argues that Smith's medical records do not support this claim, specifically arguing that he only offers self-reported evidence of smoking history. (ECF No. 38 at 13.) But, the Court agrees with Smith that the only way to prove a history of smoking is via self-report to a prison doctor. Taking the self-report to be true, the Court looks to the CDC's guidance regarding a history of smoking which advises that "being a current or former cigarette smoker increases your risk of severe illness from COVID-19." CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#smoking (last visited January 19, 2021). Thus, even if Smith has not smoked since 2009, as the government suggests, a 20-year smoking history still places him at an increased risk.

Additionally, Smith is a Black male. Smith argues that his race puts him at an increased risk of complications from COVID-19. (ECF No. 33 at 13-14.) The government fails to address the impact of Smith's race on the extraordinary and compelling circumstances analysis. The CDC has collected data on the relationship between race and COVID-19 complications, hospitalizations, and deaths and concludes that "racial and ethnic minority groups are disproportionately represented among COVID-19 cases." CDC, *COVID-19 Racial and Ethnic Health Disparities,* https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/racial-ethnic-disparities/increased-risk-illness.html (last visited January 19, 2021).[3] Further, the CDC finds that "systemic health and social inequities have put many people from racial groups at an increased risk of severe illness from COVID-19" and "increased risk of dying from

---

[3]*See also* Tiffany Ford, *Race Gaps in COVID-19 Deaths are Even Bigger Than They Appear,* Brookings (June 16, 2020) https://www.brookings.edu/blog/up-front/2020/06/16/race-gaps-in-covid-19-deaths-are-even-bigger-than-they-appear/.

5


COVID-19." *Id.* Thus, the Court finds race is an additional factor weighing in favor of extraordinary and compelling circumstances.[4]

Moreover, Smith suffers from hypertension. The CDC's revised guidance on hypertension, issued December 23, 2020, says that "people whose only underlying medical condition is hypertension might be at increased risk for severe illness from COVID-19." CDC, *Patients with Hypertension*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-Hypertension (last visited January 19, 2021) (footnotes omitted). The Court finds persuasive the discussion of hypertension in *U.S. v. Salvagno*, 456 F.Supp.3d 420, 437-47 F.Supp.3d (N.D.N.Y. Apr. 23, 2020), *reconsideration denied* (June 22, 2020). There, hypertension alone was sufficient to satisfy the "extraordinary and compelling reasons" prong. *Id.* If hypertension alone were enough for the court in *Salvagno*, that weighs in favor of the Court finding that the combination of Smith's smoking history, hypertension, and race places him at an increased risk of experiencing severe complications from COVID-19. Logically, having three risk factors (and one such as smoking history that places him at an increased risk) increases one's risk of experiencing severe complications. The Underlying Health Conditions Prong of the analysis thus weighs in favor of granting the Motion.

### ii. Location Prong

Turning to the next prong, the government contends that FCI Phoenix has "taken preventative measures to mitigate the outbreak of COVID-19" to argue that Smith faces no individualized risk. (ECF No. 38 at 9-13.) The government maintains that BOP "pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates," and cites to 59 active cases among inmates and 14 active cases among prison staff as of January 12, 2021. (*Id.* at 11-13.)

---

[4]Other district courts have also determined race is an important factor to consider when evaluating the "extraordinary and compelling circumstances" prong of the analysis. *See U.S. v. Lewis,* No. 2:10-cr-00069-RAJ, 2020 WL 5095471, at *5 (W.D. Wash. Aug. 28, 2020); *U.S. v. Perry,* No. 11-cr-20677 (E.D. Mich. Nov. 30, 2020) (ECF No. 154); *U.S. v. Williams,* No. 4:17-cr-00310-RLW (E.D. Mo. Nov. 25, 2020) (ECF No. 461).

Further, the government argues that these mitigation efforts, in combination with a forthcoming vaccine and the similarly high numbers of COVID-19 in Residential Reentry Centers ("RRC"), weigh against a finding of extraordinary and compelling circumstances here. (*Id.*) The Court disagrees.

First, the Court finds that it is still completely unknown whether and when a vaccine will be administered to those in custody at FCI Phoenix. Next, the Court notes that as of December 28, 2020, two weeks before the January numbers cited by the government were released, FCI Phoenix cited 354 active cases among inmates, 12 among staff, 92 recovered inmates and 26 recovered staff. (ECF No. 33 at 16-18.) The Court views this drastic decline in reported cases with skepticism, but ultimately finds that even if the Court were to take the current numbers at face value, 59 active inmate cases and 427 recovered inmates is enough to find that the conditions at FCI Phoenix are alarming—from a COVID-19 exposure perspective—to weigh in favor of granting Smith's Motion. These numbers indicate that, contrary to the government's argument, the BOP has not successfully mitigated the dangers of COVID-19 to inmates at FCI Phoenix and the risk of reinfection is greater based on the limited data provided by the CDC as discussed above. Finally, the Court disagrees with the government's assessment that "there is no evidence that Smith would be safer" at an RRC. (ECF No. 38 at 15.) On the contrary, as Smith points out, at FCI Phoenix there are 1,031 inmates living in a congregate living environment with high COVID-19 positivity rates (ECF No. 39 at 4); whereas, the RRC in San Francisco has 140 individuals with only two reported cases since the pandemic began and the RRC in Las Vegas has 75 individuals with only nine reported cases since the pandemic began. (*Id.*)

In short, while the Court agrees with the government that the presence of any COVID-19-positive inmates in a particular facility does not necessarily merit a finding of extraordinary and compelling reasons as to a particular defendant, the Court finds that remaining at FCI Phoenix rather than an appropriate RRC places Smith at individualized

risk. The Court therefore finds extraordinary and compelling reasons exist to grant the Motion. Accordingly, the Court moves onto the third and final step of the analysis.

**C. Section 3553(a) Factors**

The Court must next consider the factors set forth in Section 3553(a) to the extent they are applicable. These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission;[5] (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a)(1)-(7). As to the Section 3553(a)(2) factor, the need for a sentence must be sufficient, but not greater than necessary, to serve the purpose of "just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017) (citation and internal quotation marks omitted).

The government argues that the Section 3553(a) factors weigh against granting the Motion because Smith has an extensive criminal history, and he continues to present a danger to the community. (ECF No. 38 at 14-15.) While the Court agrees with the government regarding the seriousness of Smith's crime, the Court ultimately finds that the factors weigh in favor of release.

First, as of the date of filing, Smith had already served 70% of his 30-month sentence. (ECF No. 33 at 18-19.) Second, early release will help with a successful transition into the community. Smith has suffered severe trauma resulting in a substance abuse disorder, thus release to an RRC and subsequent rehabilitation program will allow him much needed access to rehabilitative programming not currently available at FCI

---

[5]Because the Sentencing Commission never released guidelines with respect to compassionate release under the FSA, Section 3553(a)(5)'s pertinent policy statement factor is neutral. *See U.S. v. Regas*, Case No. 3:91-cr-57-MMD-NA-1, 2020 WL 2926457, at *4 n.7 (D. Nev. June 3, 2020) (citation omitted).

Phoenix. (*Id.*) Third, Smith was sentenced to three years supervised release, so he will continue to be supervised upon release from RRC. (*Id.*) Fourth, Smith has a release plan. (*Id.*) He plans to reside in an RRC for up to six months and will then transition to an in-patient rehabilitation program after which he will reside at his fiancé's home where his fifteen-month-old son resides. (*Id.* at 19-20.) Finally, Smith has family support, as evidenced by his release plan. (*Id.*)

Taken together, these factors persuade the Court that ordering Smith's release aligns with the factors in Section 3553(a). While Smith's offense was serious, he has sufficiently demonstrated that early release will decrease the risk of recidivism by providing him rehabilitative services, and his time in an RRC and in-patient program in addition to an already-imposed period of supervision, will sufficiently address the Court's need to protect the public.

## V.     CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Smith's motion for compassionate release (ECF No. 33) is granted.

It is further ordered that Smith is compassionately released with credit for time served, followed by three years of supervised release. Smith will be released after he tests negative of COVID-19 or has been in quarantine for a period of 10 days from the onset of Smith's symptoms or from the date of his first COVID-19 test as the BOP deems appropriate based on CDC's recommendations.[6]

---

[6]The CDC recommends that "for most persons with COVID-19 illness, isolation and precautions can generally be discontinued 10 days *after symptom onset* and resolution of fever for at least 24 hours, without the use of fever-reducing medications, and with improvement of other symptoms." Further, "for persons who never develop symptoms, isolation and other precautions can be discontinued 10 days *after the date of their first positive RT-PCR test for SARS-CoV-2 RNA.*" But, the CDC no longer recommends diagnostic testing for purposes of discontinuing isolation or precautions

It is further ordered that Smith reside at and participate in the program of a residential reentry center for a period of up to six months as approved and directed by the probation officer. It is further ordered that Smith be released directly from the residential reentry center to an in-patient treatment program with an assessment to be conducted by a licensed treatment provider before Smith's entry into the program to determine the appropriate level of care.

It is further ordered that Smith be placed on supervised release subject to previously imposed three-year term and release conditions in addition to conditions imposed herein.

It is further ordered that Smith's motion to seal (ECF No. 34) is granted.

DATED THIS 20th Day of January 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

"except to discontinue isolation or precautions earlier than would occur" under the 10 day recommendation. CDC, *Duration of Isolation & Precautions for Adults,* https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html (last updated October 19, 2020) (emphasis in original).